National Alloys Company v. Commissioner.
National Alloys Co. v. Commissioner
Docket No. 14928.
United States Tax Court
1948 Tax Ct. Memo LEXIS 10; 7 T.C.M. (CCH) 962; T.C.M. (RIA) 48268; December 23, 1948
*10 Respondent erred in disallowing any part of the compensation paid by petitioner to its three principal executives in the taxable years 1942 and 1943. J. Marvin Haynes, Esq., Investment Bldg., Washington, D.C., and N. Barr Miller, Esq., for the petitioner. A. J. Friedman, Esq., for the respondent. LEECH
Memorandum Findings of Fact and Opinion LEECH, Judge: This proceeding involves deficiencies in declared value excess-profits tax and excess-profits tax as follows: Declared Value
Taxable
Excess-Profits
Excess-Profits
Period
Tax
Tax
Feb. 6-Dec. 31,
1942
$ 384.58
$16,224.90
1943
2,674.59
16,037.87
The sole issue involved is the reasonableness of the salaries paid by petitioner to three of its officers in the taxable years in question. The case was submitted on a partial stipulation of facts, oral testimony and exhibits. The facts as stipulated are so found. Facts found which have not been stipulated are found from the evidence. Findings of Fact Petitioner is a Michigan corporation, with its principal office and plant located at Detroit, Michigan. It was originally incorporated on February 6, 1942, under the name Hartner *11 Alloys Company. On January 21, 1943, its name was changed to National Alloys Company. Petitioner kept its books and filed its returns on a calendar year basis and on the accrual method of accounting. Its tax returns for the periods involved were filed with the collector of internal revenue for the district of Michigan. Since its incorporation petitioner has engaged in the business of producing nonferrous metal castings. Petitioner's incorporators were Frederick P. Rheinfrank, Edgar T. Clapp and Charles A. Hartner. During the taxable years involved, Rheinfrank was president, Clapp was vice-president, and Hartner was treasurer. They also constituted petitioner's board of directors. Stockholders of record of petitioner, as shown on its books as of December 31, 1942 and 1943, were as follows: Number of Shares
December 31,
December 31,
Name
1942
1943
Frederick P. Rheinfrank
1,000
1
Charles A. Hartner
1,000
800
Edgar T. Clapp
1,000
1,000
Alva Jean Rheinfrank, daughter of Frederick P. Rhein-
frank
999
Charles Frederick Hartner, son of Charles A. Hartner
200
The amounts claimed by petitioner in the taxable years 1942 and 1943, as deductions *12 for compensation to its three principal officers, and the amounts allowed and disallowed by the respondent are set forth in the following tabulation: Amount
Name of Officer
Amount Claimed
Disallowed
Amount Allowed
For 1942
Frederick P. Rheinfrank
$22,916.67
$ 5,916.67
$17,000.00
Charles A. Hartner
23,963.37
5,963.31
18,000.00
Edgar T. Clapp
19,250.00
6,250.00
13,000.00
For 1943
Frederick P. Rheinfrank
$25,000.00
$ 6,000.00
$19,000.00
Charles A. Hartner
23,420.00
6,420.00
17,000.00
Edgar T. Clapp
21,000.00
5,000.00
16,000.00
At a meeting of petitioner's board of directors held on May 11, 1942, a resolution was adopted fixing the salaries for services rendered and to be rendered commencing as of February 2, 1942 by its three principal officers in the following amounts: Frederick P. Rheinfrank
$25,000
Charles A. Hartner
23,000
Edgar T. Clapp
21,000
At said meeting it was further resolved as follows: * * *
"BE IT FURTHER RESOLVED, That the salaries provided for the Officers and employees of this Company shall be deemed to include sums expended by such officers and employees out of their own personal *13 funds for expenses incurred while on Company business, provided, however, that the Board of Directors of this Company may at its discretion authorize the payment by the company of any extraordinary expenses incurred while on company business by such officers and employees. "BE IT FURTHER RESOLVED, That this resolution shall remain in full force and effect from the date hereof, until the further action of the Board of Directors of this Company." * * *
On January 2, 1943, the board of directors adopted a resolution fixing the salaries of its three principal officers, for the ensuing year, in the following amounts: Frederick P. Rheinfrank
$25,000
Charles A. Hartner
23,000
Edgar T. Clapp
21,000
Petitioner succeeded to certain assets of a former corporation operated under the same name which was largely owned and controlled by William F. Reardon. The predecessor had been in existence over a long period of years and had established a reputation for outstanding skill in casting intricate parts and devices from nonferrous metal alloys. Reardon was growing old and was in failing health and he informed Rheinfrank and Hartner, who were then employed by the old *14 corporation, that he would be willing to sell the business and retire. On February 2, 1942, Reardon, as president, executed a bill of sale covering all the assets of the predecessor corporation, except cash and accounts receivable, to Rheinfrank, Hartner and Clapp, for a total consideration of $38,664.78. Of the total purchase price, $28,664.78 was paid in cash and the balance of $10,000 by a purchase money note secured by a chattel mortgage. Of the $28,664.78 cash payment, $19,400 was raised by selling stock of petitioner as follows: Rheinfrank
970 shares
$9,700
Hartner
820 shaes
8,200
Clapp
150 shares
1,500
$19,400
The balance of cash was borrowed by Rheinfrank, Hartner and Clapp from the Manufacturers National Bank of Detroit. Frederick P. Rheinfrank was president of petitioner during the taxable years involved. He devoted himself principally to the sale of petitioner's products. Prior to his becoming president of petitioner he had engaged in the business of selling foundry products for about 15 or 20 years. For some time prior to 1942, he was head of the sales department of the predecessor company; for about five years he was engaged in selling *15 the products of the Racine Foundry Company; and was previously connected for 12 years with the Central Specialties Company, in the capacity of secretary and, later, as president. When engaged as a salesman, he worked on a commission basis at a rate ranging from five to 25 per cent, depending upon the character of the product. In soliciting business for petitioner, Rheinfrank called on the trade in Ohio, Michigan and a little of Illinois. The expenses incurred in traveling on petitioner's business were paid by Rheinfrank from his individual funds. On his individual tax return for 1942, he claimed as deductions for entertainment and other expenses the amount of $4,342, and for the business use of his automobile, the amount of $857.61. In his 1943 return, he claimed a deduction of the sum of $4,176.98 for similar expenses. Rheinfrank devoted his full time to petitioner's business. Charles A. Hartner was treasurer and general manager of petitioner in the taxable years. Prior to 1938, he was foreman of the welding department of the Electro-Master Company. In 1938, he became associated with Mr. Reardon, a highly skilled metallurgist and nonferrous foundryman. In 1942 and 1943, he supervised *16 for petitioner the development and production of all alloys and castings, consulted with its customers, and estimated costs for petitioner's competitive bids. He developed new alloys and devised successful procedures for casting such alloys. Hartner personally paid his expenses incurred in connection with his duties performed for petitioner. On his individual income tax returns, Hartner claimed deductions for entertainment, transportation and hotel accommodations in the amounts of $5,064.93 and $5,494.06 for the respective years 1942 and 1943. Hartner devoted his full time to petitioner's business. He often worked seven days a week and at times was required to work from 14 to 16 hours a day. Edgar T. Clapp was vice-president and superintendent of petitioner's foundry. He had charge of the 70 or more employees. He possessed unusual ability in obtaining cooperation of employees and preventing absenteeism. Owing to shortage of skilled labor, he was required to train unskilled employees to become skilled operators. Clapp also had charge of petitioner's supply of raw materials. He developed a method of sandblasting casting, which substantially reduced the time consumed in the production *17 of castings and produced castings which were more uniform and of better quality. In 1943, petitioner operated two shifts which Clapp supervised, necessitating his working from 14 to 18 hours a day. Clapp also personally paid his traveling and entertainment expenses incurred in performance of his duties. On his individual tax returns, he claimed deductions for transportation and entertainment in the amounts of $6,094.89 and $5,911.45 for the respective taxable years 1942 and 1943. Clapp died in 1945, prior to the hearing in this proceeding. Petitioner's net sales, gross profits and net income after salaries and taxes for the taxable years 1942 and 1943 were as follows: Gross
Net
Net Sales
Profits
Income
1942 (11 mos.)
$512,933.71
$81,911.32
$9,499.03
1943
653,508.75
118,066.49
14,697.72
The net sales personally made by Rheinfrank were $487,882.80 for 1942 and $618,436.60 for 1943. Petitioner did not declare or pay any dividends in the years 1942 and 1943. The amounts paid by petitioner to Frederick P. Rheinfrank, Charles A. Hartner and Edgar T. Clapp, as compensation for personal services actually rendered to petitioner in the respective *18 taxable years involved were reasonable. Opinion The single issue presented is the reasonableness of the compensation paid by petitioner to its three top executives in the taxable years 1942 and 1943. Petitioner has the burden of establishing the fact of reasonableness. Each case stands on its own bottom. When the challenged payments are made to individuals owning all the stock and who constitute the board of directors authorizing them, as in this case, the surrounding circumstances are to be closely scrutinized. In applying the statutory test of reasonableness, certain established factors are considered. Some of these are the capabilities and training of the employee, the character of the services to be performed, the responsibilities they entail, the time devoted to the discharge of the duties, whether the salaries are fixed in an arm's length transaction, whether the salaries are in proportion to stockholdings, and the amount paid for like services by comparable industries. This record establishes that the individuals whose compensation is in question were all able and competent executives. Their prior training and experience thoroughly qualified them to supervise the particular *19 phases of the business assigned to them. It was their special qualifications that brought them into association. Respondent stresses the fact that shortly after petitioner's incorporation these three executives, constituting the board of directors, fixed these large salaries without knowing whether the company would have sufficient earnings to pay them. In this connection it is to be noted that petitioner succeeded to operating assets, formulas and good will of a long established and reputable foundry industry. Both Rheinfrank and Hartner had been employed by the predecessor corporation for a number of years. They were well acquainted with the complexities and possibilities of the alloy casting business. Undoubtedly, from their prior experience, they visualized the opportunity to achieve greater success than had been enjoyed by the predecessor. The casting business was then experiencing the impetus of the upsurge due to war demands. They applied their experience and their energies to cope with the unprecedented conditions. Through their skill and unstinted devotion to their business they succeeded in surmounting the handicaps caused by the scarcity of strategic metals and in successfully *20 producing alloy castings which other industries required for the production of materials for war. The value of this "know how" is difficult to measure. Rheinfrank was an experienced salesman. This record establishes that the prevailing rate of commissions paid by casting foundries to salesmen ranged from five to 25 per cent, depending on the character of the article. Of petitioner's net sales, Rheinfrank in 1942 personally solicited $487,882.80 and in 1943, $618,436.60. Had petitioner paid Rheinfrank the minimum rate of five per cent, his compensation would have been in excess of the salary which petitioner paid to him in the taxable years. The salaries paid to Hartner and Clapp were somewhat less and were fixed on a basis of what was considered their worth to the business in their respective capacities. Petitioner places considerable reliance upon the fact that the salaries were fixed by a resolution of the board of directors adopted at the beginning of the year. While such fact is a circumstance to be considered, we think the fact that the directors were also the only stockholders considerably lessens the weight to be accorded it. Of more importance here, however, is the fact that *21 the resolution fixing the salaries further provides that it shall be deemed to include sums expended out of their personal funds for expenses incurred while on business of the company. This record shows that each of the three executives in his individual tax returns claimed to have expended from his personal funds for such purposes between $5,000 and $6,000 annually. The amounts disallowed from the fixed salaries in determining a reasonable salary for each approximate such amounts. The respondent points to the fact that petitioner paid no dividends in the taxable years here involved. Such fact, we think, loses much of its importance in that there was substantial surplus available had the directors chosen to pay them. The capital of petitioner was only $30,000. Its net income, after payment of taxes, was $9,499.03 in 1942 and $14,697.72 in 1943, or a ratio of 31.66 per cent and 48.99 per cent for the respective years. Upon this record as a whole, we conclude that petitioner has carried its burden of showing that the salaries paid to its three top executives in the taxable years involved were reasonable, and the respondent erred in disallowing any part of such payments as unreasonable. *22 Decision will be entered under Rule 50.